UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

DANIEL SEEDOR, ) Case No.: 3:13-bk-02811-PMG
) Chapter 7
Debtor. )
)
_____ )
)
GUY G. GEBHARDT, )
Acting United States Trustee ) Adv. Pro. No.: 3:13-ap-00434-PMG
)
Plaintiff, )
v. )
)
DANIEL SEEDOR, )
)
Defendant. )
_____ )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN CONNECTION WITH FINAL JUDGMENT REVOKING DISCHARGE OF DANIEL SEEDOR

THIS ADVERSARY PROCEEDING came before the Court on March 19, 2014 for a final evidentiary hearing upon the Acting United States Trustee's Complaint to Revoke Debtor's Discharge (Dkt. No. 1). The final evidentiary hearing was attended by counsel for the Acting United States Trustee ("UST"), and three witnesses, Gregory Atwater ("Mr. Atwater"), Michelle Miron ("Ms. Miron") and Cynthia Gilbert ("Ms. Gilbert"), who offered testimony. The final evidentiary hearing was not attended by the defendant, Daniel Seedor ("Defendant").[1] Based upon the evidence presented at the hearing, the Court now enters into the following findings of facts and conclusions of law:

---

[1] The hearing was properly noticed. The Court waited approximately 20 minutes past the scheduled 1:30 p.m. start time to grant the Defendant additional time to attend the Court hearing. He did not appear.

1

## FINDINGS OF FACT

The following are the Court's findings of facts based upon the evidence and testimony presented at the final evidentiary hearing:

1. The Defendant is the debtor in bankruptcy case number 3:13-bk-02811-PMG, which was filed May 6, 2013 ("Main Case"; UST Exhibit 1).

2. The Defendant received a chapter 7 discharge in the Main Case on August 6, 2013 (UST Exhibit 4).

3. Ms. Gilbert first reported Defendant's conduct in the Main Case to the United States Trustee on August 8, 2013. The Court makes this finding based upon Ms. Gilbert's testimony and telephone records (UST Exhibit 33).

4. The UST did not have notice of Defendant's conduct in the Main Case until after Defendant's Discharge was entered in the Main Case.

5. As of the filing of the Main Case on May 6, 2013 ("Petition Date"), Ms. Gilbert had an approximately 21.45% interest in Pine Ridge Dairy Corporation ("Pine Ridge Dairy") (UST Exhibit 22).

6. Pursuant to the Agreement to Terminate the Seedor/Payne Children Irrevocable Truste, dated May 11, 2006, Ms. Gilbert granted Defendant a 25% interest in Ms. Gilbert's share of any proceeds of any liquidation of Pine Ridge Dairy up to a maximum amount of $750,000 (UST Exhibit 18).[2]

---

[2] This finding is in no way intended to prejudice the compromise entered into between the chapter 7 trustee and Ms. Gilbert in the Main Case. Numerous factors may be relevant to such a compromise. Not all of those factors are relevant to this revocation of discharge action.

2

7. As evidenced by the testimony of Ms. Gilbert, Ms. Gilbert intended to pay over 25% of the liquidation proceeds of Pine Ridge Dairy to Defendant if there had been no bankruptcy filing.

8. On January 23, 2013, which date is before the Petition Date, Pine Ridge Dairy underwent the first of three partial liquidations ("First Land Sale"; UST Exhibit 23). Ms. Gilbert's share of the proceeds of the First Land Sale was $20,845.29 (UST Exhibit 24).

9. Prior to the Petition Date, the Defendant had actual knowledge of the First Land Sale, including the approximate amount of money to be received by Ms. Gilbert. This is demonstrated by Ms. Gilbert's testimony as well as Email and Facebook messages between Ms. Gilbert and the Defendant (UST Exhibits 19-22).

10. After the Petition Date, but prior to Defendant's discharge, the Defendant undertook efforts to collect his share (now the bankruptcy estate's share) of the proceeds of the First Land Sale. On May 31, 2013, the Defendant's attorney, Robert B. Trumbo, Jr. ("Mr. Trumbo"), sent a letter to Ms. Gilbert on behalf of the Defendant demanding that Ms. Gilbert pay $5,226.46 within 10 days of her receipt of the letter (UST Exhibit 25). On July 29, 2013, the Defendant sent Ms. Gilbert a second letter demanding payment by no later than August 2, 2013 and threatening to file a lawsuit of August 5, 2013 if no payment is received (UST Exhibit 26).

11. On August 9, 2013, Ms. Gilbert paid Mr. Seedor and Mr. Trumbo $5,266.46 by cashier's check (UST Exhibit 27).

12. On August 5, 2013, Ms. Gilbert sent an Email to Mr. Trumbo in which she threatened to "notify the bankruptcy court" regarding the Defendant's conduct (UST Exhibit 37). This message was subsequently forwarded from Mr. Trumbo to the Defendant (UST Exhibit 16, page 216 in binder).

13. On or around December 11, 2013, Pine Ridge Dairy underwent the second of three partial liquidations ("Second Land Sale"; UST Exhibit 30). As evidenced by Ms. Gilbert's testimony, Ms. Gilbert's share of the proceeds of the Second Land Sale was in excess of $500,000.

14. As Evidenced by Emails and Facebook messages between Ms. Gilbert and Defendant, Defendant had actual knowledge that the Second Land Sale was contemplated before the Petition Date (UST Exhibit 28). In addition, the Defendant had specific details regarding the Second Land Sale shortly after the Petition Date. Id.

15. On or around December of 2013, as evidenced by Ms. Gilbert's testimony, Pine Ridge Dairy underwent the third of three partial liquidations ("Third Land Sale"). Ms. Gilbert's proceeds of the Third Land Sale were in excess of $300,000 (UST Exhibit 31).

16. As evidenced by Florida Department of Highway Safety records, photographs and the testimony of Michelle Miron, the Defendant owned a 1999 Chevrolet Suburban and a 2009 KYMCO motor scooter as of the petition date (collectively "Undisclosed Vehicles"; UST Exhibit 32). As evidenced by Florida Department of Safety Records, the KYMCO motor scooter was owned free and clear. Id.

17. On the Petition Date, the Defendant filed bankruptcy Schedules and related documents in the Main Case (UST Exhibit 2). The Defendant's Schedules do not disclose any interest in land sale proceeds of Pine Ridge Dairy or the Undisclosed Vehicles. Id.

18. On May 9, 2013, the Court entered an order striking the Defendant's Schedules because the Defendant did not sign them (UST Exhibit 1).

4

19. On May 13, 2013, the Defendant filed Amended Schedules, which he signed (UST Exhibit 3). The Defendant's Amended Schedules do not disclose any interest in land sale proceeds of Pine Ridge Dairy or the Undisclosed Vehicles.

20. On July 18, 2013, the Defendant appeared at the section 341 meeting in the Main Case (UST Exhibit 1). The chapter 7 trustee in the Main Case, Mr. Atwater, presided over the section 341 meeting. At the section 341 meeting, the Defendant answered questions under oath (UST Exhibit 10).

21. At the section 341 meeting, Mr. Atwater asked the Defendant whether the bankruptcy paperwork filed with the Court was "true and correct to the best of your knowledge?" (UST Exhibit 10). The Defendant replied "Yes, sir." Id.

22. At the section 341 meeting, Mr. Atwater asked the Defendant whether the Defendant had "Any pending lawsuits, cases, or claims where someone owes you money?" Id. The Defendant replied, "No, sir." Id.

23. At the section 341 meeting, Mr. Atwater asked the Defendant whether he had "an interest in a trust?" The Defendant replied, "No, sir." Id.

24. Mr. Atwater entered a Report of No Distribution in the Main Case on July 18, 2013 (UST Exhibit 1). As evidenced by the testimony of Mr. Atwater, he entered a Report of No Distribution due to the contents of the Defendant's bankruptcy schedules and his testimony under oath at the section 341 meeting.

25. On August 14, 2013, Mr. Atwater, withdrew his Report of No Distribution in the Main Case (UST Exhibit 1). As evidenced by Mr. Atwater's testimony, he withdrew the report of no assets due to a tip from the UST.

26. As evidenced by Mr. Atwater's testimony at the hearing, the Defendant eventually did contact Mr. Atwater by telephone and inform Mr. Atwater regarding the Defendant's entitlement to the proceeds of the First Land Sale. The Defendant initiated this contact after Mr. Atwater withdrew his Report of Distribution, after the Defendant received a discharge and after Ms. Gilbert threatened to report the Defendant's conduct to the bankruptcy Court. During the phone call, the Defendant did not inform Mr. Atwater regarding his entitlement to proceeds from the Second Land sale nor did he inform Mr. Atwater regarding the Undisclosed Vehicles.

27. On September 6, 2013, the Defendant filed a second amended Schedule B (UST Exhibit 5). The second amended Schedule B discloses the Defendant's entitlement to funds from the First Land Sale. The second amended schedule B does not disclose the Defendant's entitlement to funds from the Second Land Sale or the Undisclosed Vehicles. The Defendant filed the second amended Schedule B after Mr. Atwater withdrew his Report of Distribution, after the Defendant received a discharge and after Ms. Gilbert threatened to report the Defendant's conduct to the bankruptcy Court.

28. On September 10, 2013, the UST filed Acting United States Trustee's Complaint to Revoke Debtor's Discharge (UST Exhibit 15).

29. On February 12, 2014, the Defendant filed third amended Schedules B, D and F. The third amended Schedules disclose the Defendant's interest in the Undisclosed Vehicles but do not disclose any interest in the proceeds of the land sales of Pine Ridge Dairy (UST Exhibit 6). The Defendant filed the third amended Schedules after Mr. Atwater withdrew his Report of No Distribution, after the Defendant received a discharge, after Ms. Gilbert threatened to report

6

the Defendant's conduct to the bankruptcy Court and after the UST filed a complaint to revoke the Defendant's discharge.

30. On February 20, 2014, the Defendant filed fourth amended Schedules B, D and F. The fourth amended Schedules are substantially identical to the third amended Schedules for all purposes relevant to the complaint.

31. On September 9, 2013, Mr. Atwater filed Amended Motion for 2004 Examination of the debtor, which was granted by order of the Court on September 11, 2014 (UST Exhibits 8 and 9).

32. As evidenced by Mr. Atwater's testimony at the hearing, Mr. Atwater's office called the Defendant to confirm the time of the required 2004 Examination. However, Defendant did not attend the required 2004 Examination.

33. As evidenced by Mr. Atwater's testimony at the hearing, Mr. Atwater would have requested that the Defendant pay the $5,266.46 due to the bankruptcy estate if the Defendant would have attended the required 2004 Examination. Mr. Atwater also would have requested turnover of the motor scooter and evaluated whether any of the Defendant's other possessions could be liquidated for the benefit of the estate.

34. As evidenced by Mr. Atwater's testimony at the hearing, the Defendant remains in possession of $5,266.46 and other non-exempt assets, which are property of the bankruptcy estate.

35. The Court makes the factual finding that the Defendant knowingly and fraudulently failed to list his interest in the sale Proceeds of Pine Ridge Dairy and the Undisclosed Vehicles on the original schedules and his first amended schedules. The Court bases this conclusion on the totality of circumstances in the case, including the numerous

7

communications between Defendant and Ms. Gilbert regarding the First Land Sale and Second Land Sale and Defendant's aggressive and ultimately successful efforts to collect money from Ms. Gilbert.

36. The Court makes the factual finding that the Defendant knowingly and fraudulently gave false testimony at his section 341 meeting of the creditors regarding whether his schedules were correct, regarding whether anyone owed him money and regarding whether he had an interest in a trust. The Court bases this conclusion on the totality of circumstances in the case, including the numerous communications between Defendant and Ms. Gilbert regarding the First Land Sale and Second Land Sale and Defendant's aggressive and ultimately successful efforts to collect money from Ms. Gilbert.

37. The Court makes the factual finding that the Defendant successfully collected estate funds from Ms. Gilbert with the actual intent to hinder, delay or defraud his creditors after the Petition Date. The Court bases this conclusion on the totality of circumstances in the case, including the numerous communications between Defendant and Ms. Gilbert regarding the First Land Sale and Second Land Sale and Defendant's aggressive and ultimately successful efforts to collect money from Ms. Gilbert.

38. The Court makes the factual finding that the Defendant acquired property of the bankruptcy estate after the Petition Date, specifically the proceeds of the First Land Sale, and knowingly and fraudulently failed to report that entitlement to the chapter 7 trustee until the chapter 7 trustee discovered the First Land Sale by other means.

39. The Court makes the factual finding that the Defendant acquired property of the bankruptcy estate after the Petition Date, specifically the proceeds of the First Land Sale, and knowing and fraudulently failed to deliver those proceeds to the chapter 7 trustee.

40. The Court makes the factual finding that the Defendant became entitled to acquire property that would be property of the bankruptcy estate, specifically his future entitlement to the proceeds of the Second Land Sale, and knowingly and fraudulently failed to report the entitlement to such property to the chapter 7 trustee.

41. The Court makes the factual finding that eventual, partial disclosures made by the Defendant in the form of the phone call to the chapter 7 trustee and the second, third and fourth amended Schedule Bs were made only because the Defendant knew that his misconduct had been reported or would be reported to the chapter 7 trustee or the UST.

## CONCLUSIONS OF LAW

The following are the Court's conclusion of law:

42. The Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and this is a core matter pursuant to 28 U.S.C. § 157(2)(J). Venue in this district and division is appropriate pursuant to 28 U.S.C. § 1409.

43. The Court finds that the UST's Complaint to Revoke Debtor's Discharge was timely filed pursuant to 11 U.S.C. § 727(e).

44. Pursuant to 11 U.S.C. § 541, the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." The Court finds that Defendant's share of the proceeds of the Pine Ridge Dairy land sales and the Undisclosed Vehicles are property of the bankruptcy estate.

45. The Court finds that Count I of the UST's complaint should be granted. Count I alleges that Defendant's Discharge should be revoked pursuant to 11 U.S.C. § 727(d)(1). Section 727(d)(1) provides that "[o]n request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this

9

section if . . . such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." The Eleventh Circuit Court of Appeals has found that three elements are necessary for revocation under section 727(d)(1): "(1) the debtor obtained the discharge through fraud; (2) the [UST] possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and (3) the fraud, if known, would have resulted in the denial of discharge under 11 U.S.C. § 727(a)." In re Matos, 267 Fed. Appx. 884, 887 (11th Cir. 2008). "The party seeking revocation bears the burden of proving each of these conditions by a preponderance of the evidence." Id.

46. The UST has proven all of the elements to necessary to require revocation of discharge pursuant to section 727(d)(1). First, the Defendant engaged in a scheme of fraud when he attempted to wipe away his debts while preserving his entitlement to proceeds of the sale of Pine Ridge Dairy and his other non-exempt personal property. The Court finds that the Defendant's aggressive and successful efforts to collect undisclosed assets of the estate are especially strong evidence of Defendant's fraudulent intent. Second, as discussed above, the Court finds that the UST did not have knowledge of Defendant's fraud at the time that Defendant received his discharge. Third, the Defendant's fraud would have been grounds for denial of discharge of pursuant to 11 U.S.C. § 727(a). Specifically, the knowing and fraudulent false oaths on Defendant's Schedules and Defendant's knowing and fraudulent false oaths at the section 341 meeting of the creditors would be grounds for denial of discharge pursuant to section 727(a)(4). In addition, Defendant's post-petition transfer of estate funds with the actual intent to defraud his creditors would be grounds for denial of discharge pursuant to section 727(a)(2).

47. Accordingly, the Court shall enter judgment in favor of the UST and against the Defendant as to Count I of the UST's complaint.

48. The Court finds that the relief sought in Count II of the UST's complaint should be granted. The Count II of the UST's complaint alleges that Defendant's discharge should be revoked pursuant to 11 U.S.C. § 727(d)(2), which states that "[o]n request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if . . . the debtor acquired property of the estate, or became entitled to collect property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property of the estate."

49. The Defendant's discharge should be revoked under section 727(d)(2). The Court has made the factual finding that the Defendant acquired $5,266.46, which is property of the bankruptcy estate. The Court has made the factual finding that the Defendant did not report this acquisition to the chapter 7 trustee until he had already received his discharge, the chapter 7 trustee had learned about the entitlement from other sources and Ms. Gilbert had made explicit threats to report Defendant's misconduct to the bankruptcy Court. Even more egregious, the Defendant is still in possession of this money and other non-exempt estate assets. In addition, the Defendant failed to report his entitlement to the proceeds of the Second Land Sale, even after he received details of the sale shortly after filing.

50. Accordingly, the Court shall issue judgment in favor of the UST and against the Defendant as to Count II the complaint.

Final Judgment shall issue separately.

DONE AND ORDERED in Jacksonville, Florida on: April 17, 2014.

_____
PAUL M. GLENN
United States Bankruptcy Judge


Copies to (Service by BNC):
All creditors and parties in interest;
Daniel Seedor, 86 Heather Point Court, New Smyrna Beach, FL 32169.